OPINION OF THE COURT
Seymour Schwartz, J.
Plaintiff Theodore L. Cross (Cross) seeks a rescission of merger of Communication Channels, Inc. (CCI) into Shore Communications, Inc. (SCI), which then changed its name to Communication Channels, Inc., money damages and an accounting. A motion to preliminarily enjoin the merger was denied and the denial was affirmed by the Appellate Division.
Approximately 20 years ago CCI offered its stock publicly at $1 a share and netted $88,000 in capital. About one third of the shares were purchased by the public. In 1966 Cross began to purchase CCI shares in small amounts and finally owned approximately 2% of the shares.
Cross and defendant Joseph Shore (Shore) were both in the publishing business. Cross was an officer and principal shareholder of Warren, Gorham and Lamont, Inc. (WG & L) which to some extent competed with CCI. WG & L published “Real Estate Review” and CCI published “Na *1020 tional Real Estate Investor” and “Trusts and Estates”. Cross and Shore maintained cordial relations and met regularly for lunch. Cross is a law review graduate of the Harvard Law School, a successful and sophisticated lawyer and businessman. Shore is a self-made man, a high school graduate who became wealthy in the publishing business.
From 1962 till the events at issue CCI paid no cash dividend and only one 10% stock dividend. By 1976 there was effectively no public market for CCI shares. Shore and his family then owned 53% of the shares. In the summer of 1976 Shore spoke to Cross about taking CCI “private”. Cross was supportive and arranged to have the legal papers which had previously brought WG & L private sent to Shore for his lawyer’s use.
A reverse stock split of 1-600 was arranged in October, 1976, to facilitate going private by removing the lowest 5% of the equity held by CCI’s smallest shareholders. A tender offer of $3.25 was then made, a sum in excess of that recommended by the outside expert appraiser and substantially more than the market price for the two prior years. The reverse stock split was effected and 95% of CCI’s shares then remained in the hands of 61 shareholders. The tender offer was a success and was accepted by all minority shareholders except Cross. On October 28, 1976, Cross wrote Shore complaining of the reverse stock split.
In late 1976 or early 1977, Shore discovered that Cross was the only remaining minority shareholder. At a meeting of the two thereafter Cross informed Shore that to obtain his shares he would have to give Cross certain publication rights in “Trusts and Estates”, one of CCI’s 14 publications. Negotiations broke down when Shore’s attorney advised him that such an arrangement would risk litigation from the former shareholders. Because Cross still remained as a minority shareholder on June 30, 1977, a short form merger of CCI into SCI had to be arranged to transform CCI from a public corporation to a private corporation. Plaintiff initiated this litigation on June 27, 1977.
Cross makes no objection to the tender offer sum of $3.25 as inadequate. His sole objection after trial is to the propriety of transforming CCI from a public to private corpora *1021 tion, and the improper use of corporate funds to buy back CCI shares to go private.
The major issue to be determined then, is whether there was a valid business purpose for CCI to go private.
Shore gave four reasons in support of his business judgment that going private would be advantageous. First, there would be an annual saving of $15,000 to $25,000 to CCI because annual reports, transfer agent fees, maintenance of computer shareholder lists, services of shareholders, auditing and legal fees would not be needed or would be diminished; second, a conflict of interest whereby Shore, a 53% shareholder was forced to personally guarantee necessary bank loans which benefited all shareholders would be eliminated; third, the conflict between shareholders seeking bottom line profitability and owner-management seeking growth and other objectives would be resolved; and fourth, while not an original reason, Cross’ conduct as competitor demonstrating an adverse interest in CCI’s publication “Trusts and Estates” and the detriment of having him as a single minority gadfly shareholder with competitive business and personal objectives, supported and justified the original business judgment.
Former subdivision (a) of section 905 of the New York Business Corporation Law provided for a short form merger: “Any domestic corporation owning at least ninety-five percent of the outstanding shares of each class of another domestic corporation or corporations may merge such other corporation or corporations into itself without the authorization of the shareholders of any such corporation.”
Going private through the short form merger procedure has been upheld where appraisal rights are available such as in New York. (Santa Fe Inds. v Green, 430 US 462).
In Tanzer Economic Assoc. v Universal Food Specialties (87 Misc 2d 167, 176), Justice Greenfield reviewed the applicable New York law and concluded: “there is no basis for equitable intervention in a proposed short-form merger which complies with every requirement of State law unless (1) fraud or illegality clearly be shown, or (2) there has been concealment or nondisclosure of material facts, or (3) *1022 that the merger is merely a device to deal inequitably with the minority and has no valid business purpose, or (4) that there has been a breach of fiduciary responsibility.”
Of the four reasons, only (3) has any applicability to the facts in the within case and as to it, it was observed in Tanzer: “(8) in embarking on plans and programs, there will be no concern about possible conflicts of interest between Libby and Nestle; and (9) without public shareholders the company would not be subject to charges of overreaching or unfairness to the minority, and would eliminate all the time, expense and energy incurred in connection with stock transfers, dividends, proxy notices, annual reports, SEC compliance and the attendant legal problems.” (87 Misc 2d, at p 182.)
It is clear that the significant financial savings in going private, the elimination of a conflict of interest between Shore as majority shareholder and sole guarantor as against minority shareholder interests, the profit and dividend interests of minority shareholders pitted against growth and expansion objectives of a closely held corporation all combine here to establish a valid business purpose untainted by fraud, nondisclosure or breach of fiduciary responsibility. The plan was effected with a generous appraisal value of the shares consistent with fair dealing. These business judgments, independently sufficient, were vindicated when subsequently Cross, the sole remaining minority shareholder and a competitor, sought to obtain publishing rights to “Trusts and Estates” for his own competitive use to the disadvantage of SCI. Because of Cross’ competitive interest and his conduct in support of that interest, removing him as a minority shareholder who would have available to him corporate financial data and other information not available to the public would be a sufficient valid business purpose by itself.
Plaintiff’s reliance on the recent decision in Alpert v 28 Williams St. Corp. (Index No. 21344/80, Schwartz, J.) is misplaced. In Alpert, the merger being opposed was not a short form merger. “Since the Williams St. Corporation purchased 67.65% of the stock, Section 905 B. C. L. is not applicable.” (Alpert v 28 Williams St. Corp., p 10.)
*1023 The second reason given for plaintiff’s objection cannot be supported. If there is a valid corporate purpose for the merger and public shareholders receive a fair price for their shares it is immaterial that corporate funds are used to finance the minority buy out. (Schulwolf v Cerro Corp., 86 Mise 2d 292.)
A valid business judgment having been demonstrated going private through the New York short form merger (Business Corporation Law, § 905, subd [a]) was proper.
Judgment for defendant.